251 N.J. Super. 19 (1991)
596 A.2d 766
IN RE M.D.
Superior Court of New Jersey, Chancery Division Essex County, Family Part.
Decided June 19, 1991.
*20 Wilfredo Caraballo, Public Advocate, Joseph F. Suozzo for the Committee (Wilfredo Caraballo, Public Advocate, attorney).
Carol S. Perlmutter for Mercer County (Barry D. Szaferman, Mercer County Counsel, attorney).
RUDD, J.S.C.
M.D. was admitted to Trenton Psychiatric Hospital on July 17, 1990, pursuant to N.J.S.A. 30:4-27.1 et seq., and committed by an order dated July 18, 1990. Following a plenary hearing pursuant to R. 4:74-7(e) and (f), and N.J.S.A. 30:4-27.1, I ordered that M.D. be involuntarily committed, notwithstanding his request to be admitted as a voluntary patient.
Specifically, the question presented is whether, as a matter of law, a patient who has been involuntarily confined to a psychiatric facility may be converted to a voluntary status as a matter of right, so long as the patient makes the requisite showing *21 that he is "willing to be admitted to a facility voluntarily for care" (N.J.S.A. 30:4-27.2(ee). This question is asked even though the State would be able to meet the requisite proofs of mental illness and dangerousness required for an involuntary civil commitment.
It is a matter of law which involves the construction of the statutory scheme governing civil commitment and voluntary hospitalization. It is codified in N.J.S.A. 30:4-27.1 et seq. Also involved is the corresponding court rule, R. 4:74-7.
R. 4:74-7(f) captioned "Final Order of Commitment, Review" sets forth four criteria required for involuntary civil commitment. The rule states, in relevant part, as follows:
The court shall enter an order authorizing the involuntary commitment of an adult patient if it finds, by clear and convincing evidence presented at the hearing that the patient is in need of continued involuntary commitment by reason of the fact that he is (1) mentally ill, (2) mental illness causes him to be dangerous to self or dangerous to others or property as defined in N.J.S.A. 30:4-27.2h and 2i, (3) he is unwilling to be admitted to a facility for voluntary care, and (4) he needs care at a short term care, psychiatric facility because other services are not appropriate or available to meet his mental health care needs.
Thus, the rule is explicit in that each of the four identified criteria must be established by clear and convincing evidence before an order authorizing involuntary confinement can be entered. It follows that if any of the four criteria are not present, then an order for involuntary commitment is not properly entered.
In the instant matter, it was not established that M.D. was "unwilling to be admitted at a facility for voluntary care." R. 4:74-7(f)(3). In fact, it was represented on oral motion by M.D.'s counsel that M.D. desired to be admitted voluntarily to the facility. Under these circumstances, it is clear that M.D.'s involuntary commitment was neither necessary nor authorized under the court rule, inasmuch as he desired to willingly admit himself for care on a voluntary basis.
The current statutory scheme governing civil commitment provides for involuntary civil commitment only when a person *22 refuses care on a voluntary basis. This standard applies even though the state could establish that the person was mentally ill, and as a result, likely to be dangerous. In fact, the statute has specifically defined "voluntary admission" to include individuals who may be dangerous. N.J.S.A. 30:4-27.2(ee) has defined voluntary admission as:
(t)hat adult who is mentally ill, whose mental illness causes the person to be dangerous to self or dangerous to others or property and is willing to be admitted to a facility voluntarily for care, needs care at a short-term care or psychiatric facility because other facilities or services are not appropriate or available to meet the person's mental health needs. A person may also be voluntarily admitted to a psychiatric facility if his mental illness presents a substantial likelihood of rapid deterioration in functioning in the near future, there are no appropriate community alternatives available and the psychiatric facility can admit the person and remain within its rated capacity. [Emphasis supplied]
Moreover, the court is authorized under N.J.S.A. 30:4-27.15(a) to order involuntary commitment only if an individual has been found to "need continued involuntary commitment." N.J.S.A. 30:4-27.15(a) provides:
If the court finds by clear and convincing evidence that the patient needs continued involuntary commitment, it shall issue an order authorizing the involuntary commitment of the patient and shall schedule a subsequent court hearing in the event the patient is not administratively discharged pursuant to section 17 of this act prior thereto.[1]
The phrase "needs continued involuntary commitment" is a statutorily defined term which establishes the conditions which are necessary for an involuntary commitment. See N.J.S.A. 30:4-27.15(a).
N.J.S.A. 30:4-27.2(m) has defined those persons in need of an involuntary commitment as:
An adult who is mentally ill, whose mental illness causes the person to be dangerous to self or dangerous to others or property and who is unwilling to be admitted to a facility voluntarily for care, and who needs care at a short-term care, psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental health care needs. [Emphasis supplied]
*23 However, it must be emphasized that patients who are admitted to a psychiatric facility on a voluntary basis do not necessarily have the unfettered freedom to leave it.[2] Upon receipt of a patient's request for discharge from the facility, the treatment team[3] has 48 hours, or until the end of the next business day, to determine whether the patient's status should be changed from a voluntary commitment to an involuntary one. N.J.S.A. 30:4-27.20. Thus, the statute inherently protects both the patient and the public by insuring that those in need of psychiatric care receive it.
It must be noted that the legislative findings and declarations, set forth in N.J.S.A. 30:4-27.1(a) and supported by N.J.S.A. 30:4-27.2(m) take the position that a person should be involuntarily committed only when the mentally ill person does not seek treatment of his own volition. Specifically, N.J.S.A. 30:4-27.1(a) notes that the State is responsible for providing care, treatment and rehabilitative services to mentally ill persons who cannot provide basic care for themselves or who are dangerous to themselves. It is further stated that since some of these mentally ill individuals do not seek treatment, or are *24 unable to benefit from outpatient services, it is necessary for state law to provide for their voluntary admission, and for their involuntary commitment. N.J.S.A. 30:4-27.1(a). In addition, a holistic look at the legislative findings illustrates the need to limit the scope of involuntary commitments. It is New Jersey state policy that the mental health systems be developed in a manner which protects individual liberty, and provides for advocacy and due process. N.J.S.A. 30:4-27.1(c).
Thus, since patients who are admitted to a psychiatric facility on a voluntary basis are not deprived of their liberty, it is preferred by this court and consistent with the legislative intent that, if applicable, a patient be voluntarily admitted rather then be involuntarily committed.
In sum, since M.D. was willing to be admitted to a psychiatric facility as a voluntary patient, I hereby vacate my prior order committing M.D. on an involuntary basis and declare him to be a voluntary patient subject to review.
It is so ordered.
NOTES
[1] N.J.S.A. 30:4-27.17.
[2] N.J.S.A. 30:4-27.20 states that a patient who has been committed on a voluntary basis to a short-term care or psychiatric facility or special psychiatric hospital shall be discharged by the treatment team at the patient's request.

The treatment team shall document all requests for discharge, whether oral or written, in the patient's clinical record. The facility shall discharge the patient as soon as possible but in every case within 48 hours or at the end of the next working day from the time of the request, whichever is longer, except that if the treatment team determines that the patient needs involuntary commitment the treatment team shall initiate court proceedings pursuant to section 10 of this act. (N.J.S.A. 30:4-27.10). The facility shall detain the patient beyond 48 hours or the end of the next working day from the time of the request for discharge, only if the court has issued a temporary court order.
[3] "Treatment team" means one or more persons, including at least one psychiatrist or physician, and may include a psychologist, social worker, nurse and other appropriate services providers. A treatment team provides mental health services to a patient of a screening service, short-term care or psychiatric facility. N.J.S.A. 30:4-27.2(dd).